UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

c

| | |
|---|---|
| MURRY HINES TOMS,<br>Plaintiff | CIVIL ACTION NO. 1:18-CV-00999 |
| VERSUS | |
| U.S. COMMISSIONER SOCIAL<br>SECURITY ADMINISTRATION,<br>Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Before the Court is Murry Hines Toms's ("Toms's") appeal of the denial of Social Security disability insurance benefits ("DIB") by the Commissioner of Social Security (the "Commissioner"). Because substantial evidence supports the ALJ's findings, the Commissioner's decision is AFFIRMED and Toms's appeal is HEREBY DENIED and DISMISSED WITH PREJUDICE.

I. Background

Toms protectively filed an application for period of disability and DIB under Title II of the Social Security Act (the "Act") on September 28, 2016. ECF No. 12-1 at 60. Toms alleged a disability onset date of August 26, 2016, due to eyesight problems, gout, and high blood pressure. *Id.* at 60-61. Toms's claims were initially denied by the Social Security Administration ("SSA") on January 11, 2017. *Id.* at 66.

Toms's application was heard before an administrative law judge ("ALJ") on August 7, 2017. *Id.* at 25-25. Toms appeared with Ivory Youngblood, a vocational expert ("VE"). *Id.* Toms also appeared with his attorney Jennifer Woodland. *Id.* The ALJ denied Toms's claims on August 31, 2017. *Id.* at 11-24. The ALJ determined

that Toms was not disabled under the Act, finding at step five of the sequential evaluation process that he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.*

On May 31, 2018, the Appeals Council denied Toms's request for review, and the ALJ's August 31, 2017 decision became the final decision of the Commissioner. *Id.* at 4-8.

Proceeding *in forma pauperis*, Toms filed this appeal for judicial review. ECF No. 1. Toms asserts the residual functional capacity ("RFC") findings of the Commissioner are not supported by substantial evidence. ECF No. 13 at 4.

The Commissioner responded. ECF No. 15. Toms's appeal is now before the Court for disposition.

### A. Administrative Hearing

At the August 7, 2017 administrative hearing, Toms testified that he was born on November 2, 1955. ECF No. 12-1 at 29. Thus, he was 61 years old on the date of the hearing. He was 6'1" and weighed 290 pounds. *Id.* at 45. He had a high school education. *Id.*

Toms last worked for G.W. Morgan Logging for 11 years as a loader. *Id.* at 29, 32. He loaded trucks with a hydraulic log loader. *Id.* Toms testified he sat in a chair and operated the loader with two joysticks and foot pedals. *Id.* at 31.

Prior to that – from 2000 to 2005, Toms was self-employed as a shearer. *Id.* at 32. Toms testified he operated a shear to cut down trees. *Id.* at 32-33. Toms supervised five people working under him. *Id.* at 34-35.

Toms was laid off the last week of September of 2016. *Id.* at 35. He was "in bad shape" by then. *Id.* The bottoms of his feet were killing him. *Id.* He testified that he could not get to the bathroom at night and sometimes had to take pills. *Id.* at 35-36. He broke his left ankle with a log a long time ago and has two pins in it. *Id.* at 35. His ankle is now "way worse." *Id.* at 36. Toms is not walking all the time now as when he was working. *Id.* He also has gout. *Id.* Toms did not know the problem with the bottom of his feet. *Id.* The gout gets in his toes and his ankle. *Id.*

Toms testified he is not getting any treatment and has never been to the doctor for his ankle problems. *Id.* at 37. He asked the doctor one time about the gout in his feet but was told he can take medicine for it. *Id.* Toms testified he has gout in his left foot all the time. *Id.* He last saw a doctor eight months ago because of problems in his feet. *Id.* at 38. Toms testified they speculated it was gout and told him what to take for it. *Id.*

Toms has a regular dermatologist and eye doctor. *Id.* He has not often visited a regular medical doctor. *Id.* He does not go to a doctor unless he is in bad shape. *Id.* at 39. He did not recall who originally diagnosed him with gout. *Id.* He could not recall the medication he was given eight months ago for gout. *Id.* Toms testified he no longer takes the medication and now takes over the counter Equate brand of Aleve. *Id.* at 39-40. Toms testified he sees a dermatologist for skin cancer all over his arms. *Id.* at 40. He also had skin cancer on his head and was told by his boss to go get it cut off. *Id.* Toms testified that was done around July or August of 2016. *Id.* at 40-

3

41. He did not have any physical problems from his skin cancer. *Id.* at 41. He also had a tumor removed from his left elbow. *Id.*

Toms testified he also has a vision problem. *Id.* at 42. He has not been back lately for treatment. *Id.* The last time he saw an eye doctor was probably a year ago. *Id.* Toms testified they did not think his vision was really bad and wanted him to wear glasses for a while. *Id.* Toms testified his right eye has gotten progressively worse. *Id.* He has not been back to check on it. *Id.* He testified he has Medicaid now and cannot go back. *Id.* Toms testified he has always had astigmatism. *Id.* at 43. He also had cataracts but had surgery to remove them around 2015. *Id.*

Toms's driver's license expired two or three years ago. *Id.* He testified he passed the vision test one time in Minden with a new lady who let him pass. *Id.* He testified that at Jonesboro they say his eyes are not good enough. *Id.* Toms testified they would not renew his license because of his vision problem. *Id.* at 44.

He can see "pretty fair" out of his left eye but everything is fuzzy in his right eye. *Id.* He testified "a bunch of sties" came up on his right eye after the cataract surgery and it has been off ever since. *Id.* He can read with reading glasses he got at Walmart. *Id.* Toms stated he knows he should go to see a doctor more, but just doesn't unless he must. *Id.* Since he left work his vision has maybe gotten a little worse but not much. *Id.* He thinks they laid him off because they found out about his vision. *Id.* He testified that sometimes they drove one of their company pickup trucks to work and he was asked to come down there with a copy of his license. *Id.*

4

at 44-45. Toms told work he did not want to drive the company truck and thought they might have figured his license was expired. *Id.* at 45.

Toms's attorney questioned him about his foot problems. *Id.* at 45. Toms testified that if he stays on them very long it feels like needles all the time. *Id.* at 46. If he is on concrete, he is crippled within a couple of hours. *Id.* He has not had any blood work done to test for chronic illnesses. *Id.*

Toms takes medication for hypertension. *Id.* He does not have any way to check his blood pressure at home. *Id.* He cannot tell if his blood pressure is high. *Id.* He checks his blood pressure every time he goes to the doctor, like the dermatologist. *Id.* Toms testified that it was "all right" the last two times he went. *Id.* at 46-47. He testified that before that it was "a little bit high" but not bad. *Id.* at 47. Toms did not have any problems with his medication. *Id.*

Toms's attorney questioned him about his ankle injury. *Id.* Toms testified that a log rolled over on the ground and broke both bones in his left ankle. *Id.* He received two stainless steel pins. *Id.* His ankle aches every day. *Id.* It is worse on unlevel ground. *Id.* For the last two to three months he takes pills every day. *Id.* He gets up usually twice in the middle of the night to go to the bathroom and cannot hardly get there. *Id.* at 47-48. He denied taking any medication with a diuretic or fluid component. *Id.* at 48.

Toms testified he does not know of any problems that his weight has caused. *Id.* He was aware what a gout flare-up was and could tell when it is coming on. *Id.* He testified his big toe will go straight up. *Id.* His left foot was the worst. *Id.* His

5

last flare-up was a couple of days ago. *Id.* at 49. When he was working, he had a flare-up every couple of weeks with his right foot. *Id.* His left foot now has a flare-up every day and it will never go all the way down. *Id.* His knees have not bothered him in two to three months. *Id.*

Toms testified he has trouble with his balance. *Id.* He has problems after standing and walking for 30 minutes, but no problems sitting in a chair. *Id.* at 50. He has carpal tunnel in his left wrist from running the loader. *Id.* He did not go to the doctor for it and stated his boss told him that is what he had. *Id.*

Toms testified that he is unable to return to work because he has not had his license fixed and because he cannot go far due to his truck being old. *Id.* at 51. He has two granddaughters he has custody of and is raising. *Id.* Toms further testified that logging is not very good right now and it is hard to find a job in logging. *Id.*

The VE testified that, according to the record and Toms's testimony, his past work consists of a shovel loader operator, exertional level of light, skill level of four, and DOT[1] number 921.683-058. *Id.* at 52. The VE testified that Toms also performed the job of tree shearer operator, exertional level of medium, skill level of four, and DOT number 454.683-010. *Id.* The VE further testified that Toms performed the job of logging supervisor, exertional level of light, skill level of seven, and DOT number 459.133-010. *Id.* at 53. The VE testified that the tree shearer operator and the logging supervisor were composite jobs. *Id.*

---

[1] Dictionary of Occupational Titles.

The ALJ asked the VE to assume a hypothetical individual with the same age, education, and past work experience as Toms with the following limitations: medium range of exertion; can read, but because of the history of cataracts and vision problems can read ordinary newspaper or books print, but not fine print; can determine the differences in the shape or color of small objects such as screws, nuts, and bolts; can avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; and cannot operate motorized vehicles. *Id.* at 53. The ALJ asked the VE if, based on those limitations, whether that hypothetical individual could perform any of Toms's past work. *Id.*

Regarding the ALJ's hypothetical, the VE testified that the loader operator or tree shearer operator would not be required to operate motorized vehicles, but they would be able to operate a track hoe or loader or shearer. *Id.* at 54. The ALJ asked to count those out and inquired whether there would be other work on the medium range. *Id.* The VE testified there are other jobs in the national economy that such an individual could perform. *Id.* at 54. The VE stated that the individual with such limitations could work as a coffee maker, exertional level of medium, skill level of two, and DOT number 317.684-010 (396,412 jobs in the national economy). *Id.* The VE also testified that the individual could also work as a box maker, exertional level of medium, skill level of two, and DOT number 920.587-018 (565,234 jobs in the national economy). *Id.* The VE further testified that the individual could work as a machine cleaner, exertional level of medium, skill level of two, and DOT number 699.687-014 (245,185 jobs in the national economy). *Id.*

The ALJ asked the VE to assume the hypothetical individual is also required to take two additional breaks a day in addition to those normally scheduled, of 10 to 15 minutes each. *Id.* at 54. The ALJ asked whether that individual would be able to perform any of the jobs cited in response to the first hypothetical. *Id.* The VE testified that with that limitation, the individual would be excluded from performing any of the jobs cited in response to the first hypothetical, as well as any jobs in the national economy. *Id.* at 54-55.

The ALJ asked the VE to assume the same limitations as the first hypothetical, but add that the individual, because of impairment-related symptoms, was required to be absent two days or more each month. *Id.* at 55. The VE testified that, with that additional limitation, the individual would be precluded from performing the jobs identified in response to the first hypothetical, as well as any jobs in the national economy. *Id.*

When the ALJ asked if the DOT addressed the issue of absenteeism, the VE testified it does not. *Id.* The VE testified his response is based on the research he has done, as well as observing and training in job placement and responsibilities for a given job. *Id.*

Toms's attorney asked the VE to assume that the hypothetical individual, due to an undiagnosed problem, would only have occasional use of his left non-dominant upper extremity. *Id.* Toms's attorney asked the VE whether any of the three jobs he identified would be available. *Id.* The VE asked that she quantify the term "use." *Id.* at 55-56. Toms's attorney asked the VE to assume use of the individual's left hand

or upper extremity, for fine and gross manipulation, up to two hours and 40 minutes of an eight-hour workday. *Id.* at 56. The ALJ confirmed with Toms's attorney that by "fine and gross" he meant reaching, handling, and fingering. *Id.* And the VE clarified he was to assume no limit on the right extremity. *Id.* Assuming the hypothetical individual with those limitations, the VE testified it would preclude the three jobs she identified earlier. *Id.*

Toms's attorney asked the VE to go back to the original hypothet and assume the individual, due to deconditioning, would need to sit after every 20-30 minutes of standing and walking. *Id.* at 56-57. The VE confirmed that the limitation included the individual still being at the workstation and still being on task. *Id.* at 57. Toms's attorney also clarified that for every 20-30 of standing and walking, they would have to sit for 20-30 minutes. *Id.* The VE testified that the jobs identified would still be available due to being on task and not being away from the workstation. *Id.* Toms's attorney asked the VE to assume the person had to be absent or leave work early, one-and-a-half days per month, one eight-hour day, and then four hours, out of the month. *Id.* The VE testified that given the RFC, the job would still be available and in excess of that threshold would become unavailable. *Id.*

### B. ALJ's Findings

To determine disability, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 404.1520(a). The sequential process required the ALJ to determine whether Toms: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404,

Subpart P, Appendix 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. See Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant can perform work in the national economy. See Greenspan, 38 F.3d at 237.

Here, the ALJ found Toms met the insured status requirements of the Act through December 31, 2020. ECF No. 12-1 at 16. The ALJ found that Toms had not engaged in substantial gainful activity since August 26, 2016, the alleged onset date. *Id.* In step two and three of the sequential evaluation, the ALJ determined Toms suffered severe impairments of hypertension, gout, cataracts, and obesity. *Id.* But the ALJ concluded Toms did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in Appendix 1. *Id.* at 17.

The ALJ determined Toms retained the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c), except he can read ordinary newspaper or book-sized

print but not fine print; can determine differences in the shape and color of small objects such as screws, nuts, or bolts; can avoid ordinary hazards in a workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; and cannot operate motorized vehicles. *Id.* at 18.

The ALJ concluded Toms's RFC precluded him from performing any past relevant work. *Id.* at 20. He further found that Toms – age 60 on the alleged disability onset date – was an individual closely approaching retirement age with at least a high school education and the ability to communicate in English. *Id.* Transferability of job skills was not material to the ALJ's determination of disability because he found that using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled." *Id.*

The ALJ also determined that, considering Toms's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Toms could perform. *Id.* The ALJ had the VE testify regarding jobs with Toms's age, education, work experience, and RFC. *Id.* at 21. The VE testified that given all the factors, the hypothetical individual would be able to perform the requirements of representative occupations such as coffee maker, with 396,412 jobs nationally; box maker, with 565,234 jobs nationally; and machine cleaner, with 245,185 jobs nationally. *Id.*

The ALJ found that under SSR 00-04p, the VE's testimony was consistent with the information contained in the DOT, and Toms could make a successful adjustment to other work that exists in significant numbers in the national economy. *Id.* The

11

ALJ concluded that Toms had not been under a disability, as defined in the Act, from August 26, 2016, through the date of his decision. *Id.*

II. **Law and Analysis**

   A. **Scope of Review.**

In considering Social Security appeals, the Court is limited by 42 U.S.C. § 405(g) to a determination of whether "substantial evidence" exists in the record to support the Commissioner's decision, and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.

1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

### B. The ALJ's determination of Toms's RFC was proper.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports or all the evidence that the ALJ rejected. *Falco*, 27 F.3d at 163-64. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson*, 864 F.2d at 343; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). A court "may only scrutinize the record" and consider whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Because the treating physician is most familiar with the claimant's impairments, his opinion should be accorded great weight in determining disability.

*See Giles v. Astrue*, 433 Fed. Appx. 241, 246–47 (5th Cir. 2011) (citing *Newton*, 209 F.3d at 455). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *See Giles*, 433 Fed. Appx. at 246-47 (citing 20 C.F.R. § 404.1527(d)(2)). Likewise, when a treating physician has reasonable knowledge of the impairment, his opinion is given more weight than an opinion from a non-treating physician. *See id.* Treating physicians' opinions also receive greater weight "[w]hen the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment." *See id.*

Moreover, the Fifth Circuit has recognized that an ALJ "is not required to give controlling weight to a treating physician opinion when that opinion is contradicted by examining physician evidence." *Walker v. Barnhart*, 158 Fed.Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). The Fifth Circuit does not require consideration of each of the six factors set out in *Newton* when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Id.*

Additionally, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citation omitted). However, an ALJ cannot reject a medical opinion without an explanation supported by good cause. *See Loza v. Apfel*, 219 F.3d 378. 395 (5th Cir. 2000) (citations omitted).

Toms asserts "[t]he ALJ's RFC determination is not supported by substantial evidence because he failed to provide any logical rationale for disregarding only the disabling portions of the single medical opinion of record." ECF No. 13 at 4. Toms argues the ALJ did not include disabling limitations from the opinion of Dr. Naveed Cheema ("Dr. Cheema"). *Id.* at 6. Toms claims the ALJ provided no legitimate reasons for discounting Toms's limitations Dr. Cheema based on deconditioning. ECF Nos. 13, 16. Toms asserts the ALJ failed to include Dr. Cheema's opinion that Toms would likely require breaks every 20-30 minutes. ECF No. 16 at 2.

Dr. Cheema performed a consultative comprehensive physical exam on December 10, 2016. ECF No. 12-1 at 204. Dr. Cheema's findings show Toms ambulated without assistance. *Id.* at 205. He determined Toms had slight swelling and erythema bilaterally in his great toes, with no warmth or tenderness on palpation. *Id.* Dr. Cheema's exam revealed Toms had normal gait and was able to rise from a sitting position without assistance, stand on his tiptoes, heels, and tandem walk without problems. *Id.* Dr. Cheema noted Toms was able to bend and squat with mild difficulty. *Id.* Dr. Cheema observed that Toms had normal grip strength with adequate fine motor movements, dexterity, and the ability to grasp object bilaterally. *Id.* Dr. Cheema also observed normal range of motion. *Id.* at 207. Dr. Cheema observed bilateral lower extremity varicosities, left ankle-medial surgical scar, and no abnormal pigmentation, rash, or other lesions. *Id.* Toms was able to communicate

with no deficits, had recent and remote memory intact, and had good insight and cognitive function. *Id.*

Dr. Cheema observed visual acuity of 20/50 in the right eye and 20/40 in the left eye without correction. *Id.* Neurologically, Toms had good tone, 5/5 motor strength bilaterally in all muscle groups, pain with light touch and position intact throughout. *Id.* Dr. Cheema diagnosed Toms with "decreased visual acuity – query retinopathy due to uncontrolled hypertensive." *Id.* at 206. He noted Toms was not using visual correction at the time of the exam. *Id.* Dr. Cheema also diagnosed Toms with obesity and deconditioning, uncontrolled hypertension, and gout. *Id.* Dr. Cheema also noted a query for obstructive sleep apnea based on body habitus, neck size, and degree of hypertension. *Id.* at 206.

Here, after consideration of the entire record, the ALJ determined Toms retained the RFC to perform medium work, except that he can read ordinary newspaper or book-sized print but not fine print; can determine differences in the shape and color of small objects such as screws, nuts or bolts; can avoid ordinary hazards in a workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; and cannot operate motorized vehicles. ECF 12-1 at 18.

The ALJ gave partial weight to the opinion of consultative examiner Dr. Cheema. ECF No. 12-1 at 19. Dr. Cheema opined that Toms had significant obesity, deconditioning, and uncontrolled hypertension. *Id.* The ALJ noted that Dr. Cheema opined that Toms had no significant musculoskeletal limitations and that he should be able to sit, walk, and/or stand for a full workday and lift/carry objects, however,

would likely require breaks every 20-30 minutes due to his deconditioning. *Id.* Dr. Cheema stated Toms was able to hold a conversation, respond appropriately to questions, and carry out and remember instructions. *Id.* Dr. Cheema noted that Toms's issues can all improve with medical attention. ECF No. 12-1 at 206.[2] The ALJ noted that "deconditioning" is not a medically determinable impairment and is not considered in rendering a RFC under the Commissioner's policy. *Id.*

In determining the RFC, the ALJ stated that Toms initially alleged disability due to eyesight, gout, and high blood pressure. *Id.* at 18. The ALJ noted that Toms could not get his driver's license renewed, secondary to bad eyesight. *Id.* The ALJ observed that Toms testified he was laid off from work in September of 2016 because he was having difficulty with his feet. *Id.* The ALJ also noted that Toms's ankle had worsened but he had not received regular treatment for gout. *Id.* at 18-19. He also noted Toms had cataract surgery in 2015 and could see with his left eye but his right eye was fuzzy. *Id.* at 19. The ALJ discussed Toms's history of congenital nystagmus and cataracts, diagnosed in May of 2012. *Id.* He noted that Toms's ophthalmologist Dr. William Jason Read performed phacoemulsification of cataract and posterior chamber intraocular lens implant in each eye, May 21, 2012 and June 4, 2012, respectively. *Id.* The ALJ noted that Toms's artificial lens implants were stable on one-month follow-up. *Id.*

The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. *Villa v. Sullivan*, 895 F.2d 1019, 1023-1024 (5th Cir. 1990); 20

---

[2] A condition that can reasonably be remedied by surgery, treatment, or medications is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

17

C.F.R. § 404.1546. The ALJ considers all relevant medical and other evidence to make the RFC determination. 20 C.F.R. § 404.1545(a)(3); SSR 96-5, 1996 WL 374183, at *5. It is axiomatic that the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

> The Social Security Regulations provide, as follows:
>
> The Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s). Therefore, in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments. **It is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the individual had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.)** Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the individual's medically determinable impairment(s) and related symptoms) are not factors in assessing RFC in initial claims.

SSR 96-8p, 1996 WL 374184 at *2 (emphasis in original).

Dr. Cheema attributed the limitation of breaks every 20-30 minutes due to deconditioning. ECF No. 12-1 at 206. Here, the ALJ gave partial weight to Dr. Cheema's opinion that Toms required breaks every 20-30 minutes due to deconditioning. ECF No. 12-1 at 19. The ALJ noted that Dr. Cheema observed that Toms had no significant musculoskeletal limitations; that he was able to sit, walk, and/or stand for a full workday and lift/carry objects; that he ambulated without assistance; that had a normal gait and station; that he was able to bend and squat with mild difficulty; and that he demonstrated a full range of motion in all major

18

joints. ECF No. 12-1 at 19. The ALJ explained that "deconditioning" would not be considered in rendering the RFC as is not a medically determinable impairment. ECF No. 12-1 at 19; see *Pinkins v. Astrue*, 2010 WL 3825433, at \*11 (E.D. La. Sept. 8, 2010) (finding that deconditioning is not a medically determinable physical impairment).

The ALJ determined that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *Id.* However, the ALJ found that Toms's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and record evidence. *Id.* The ALJ noted that Toms self-reported in his Function Report that he can pay attention for unlimited amounts of time and finish what he starts. *Id.* He can follow both written and spoken instructions "fair." *Id.* The ALJ further stated Toms reported he watches TV every day, and he performs a full range of adaptive activities such as preparing meals, doing housework, shopping weekly, and handling money. *Id.* The ALJ determined there was no support for Toms's claim that he would require unscheduled breaks during the normal workday due to pain, dizziness, shortness of breath, and fatigue. ECF No. 12-1 at 19.

Here, the ALJ's resolution of conflicting evidence in the record is entitled to considerable deference. *Vaughn v. Colvin*, 589 Fed.Appx. 238, 242 (5th Cir. 2014) (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)). The ALJ resolves conflicts in evidence, not the Court. It is axiomatic that the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.

*See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The ALJ's RFC assessment is supported by substantial evidence.

### III. Conclusion

Because the ALJ's findings are based on substantial evidence in the record,

IT IS ORDERED that the final decision of the Commissioner is AFFIRMED, and Toms's appeal is DENIED and DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 27TH day of April, 2020.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE